## Lewis *versus* Jeffries, Assignee of Bank of Brandywine.   Lewis's Appeal.

</div>

The Bank of Brandywine, incorporated by the legislature of the state, prior to the adoption of the new constitution, was authorized by its charter to borrow money by mortgage of its real estate.   It executed a mortgage upon its bank building, to secure a loan, and some time thereafter was compelled by its embarassments to make an assignment for the benefit of its creditors.   Proceedings were instituted to foreclose the mortgage, when the assignee applied to the court for an injunction to restrain the collection of the debt, on the ground that the mortgage was unlawfully created, inasmuch as the bank had not complied with the provisions of sect. 7, art. 16 of the constitution, prescribing the mode in which the indebtedness of corporations is to be incurred, and the Act of April 18th 1874 enacted to carry the section into effect.   The court below granted a preliminary injunction:  *Held*, that the injunction should not have been granted.

February 25th 1878.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ.   WOODWARD, J., absent.

Appeal from the Court of Common Pleas, No. 3, of *Philadelphia county* :  Of January Term 1876, No. 69.   In equity.

This appeal was taken by Charles S. Lewis, from the decree of the court, granting an injunction to restrain said Lewis from the collection of a bond and mortgage upon the bank buildings of the Bank of Brandywine.   It appeared from the bill which was filed by the assignee of said bank, and from the affidavits and counter affidavits filed in the case, that the Bank of Brandywine, which was located in West Chester, Pennsylvania, was incorporated by the Act of March 15th 1871, Pamph. L. 64.   Among other provisions of its charter are the following :—

" They (the corporators) are hereby made capable to have, purchase, receive, possess, enjoy, and retain, to them, and their successors, such real estate as may be necessary for the transaction of

[Lewis *v.* Jeffries.]

their business, together with such as may be held by said company as security for debts or in satisfaction thereof, and the same to grant, mortgage or demise."

" That it shall be lawful for said company to receive deposits of money from individuals and corporations, and to allow such interest for money so received as may be agreed upon between said company and said depositors * * * and to issue certificates for said deposits."

" It shall be lawful for said company to borrow money, but not in excess of its capital stock subscribed, and to secure the same by mortgage on its real and personal property, or pledge of stocks or bonds, or otherwise, and on such time as the majority of the directors may deem expedient."

" That the capital stock of said bank shall be $100,000 * * * with the privilege of increasing the same by a vote of the directors to the amount not exceeding $300,000."

" That the affairs of said company shall be conducted by a president and six directors, to be chosen as hereafter directed and provided for."

On the 25th of June 1874, the bank delivered to Robert S. Paschal a bond and mortgage upon its bank building, to secure a loan of $15,000. This bond and mortgage were purchased by the defendant, Lewis, on the 2d of July 1874, who believed it a safe and permanent investment, and who received from the bank, at the same time, a declaration that it had no set-off. The mortgage was made in pursuance of a resolution of a majority of the board of directors of the bank, and it subsequently had the approval of a majority of the stockholders at the first annual meeting thereafter, in May 1875. One of the directors who passed the resolution to create the mortgage was Charles Dingee, the president of the Dingee and Conard Company, and it appeared the money to be raised thereon was to be applied to the discharge of a mortgage upon the real estate of said company, a foreclosure of which was threatened, and which it was found would endanger a large indebtedness of the company which the bank held. It appeared, however, that a first mortgage upon the real estate of the company was held by the bank, and the aggregate indebtedness of the latter was not therefore increased by the creation of the mortgage in suit. Two semi-annual payments of interest were made to Mr. Lewis, and until the filing of this bill no objection whatever was made to the validity of the mortgage. The bank soon thereafter became embarrassed, and made an assignment to the complainant for the benefit of creditors on the 22d of December 1875. The assignee sold the bank building for $19,700, and alleging that by reason of this mortgage a cloud was cast upon the title, and he was prevented from making a marketable title to the property, he prayed in the bill filed: 1. that the said creation of the indebtedness of $15,000 be declared unlawful. 2. That the

[Lewis *v.* Jeffries.]

mortgage be declared void and delivered up to be cancelled. 3. That defendant be restrained by injunction from proceeding to collect said debt upon the judgment or upon the mortgage.

The court, Finletter, J., continued the special injunction previously granted, and, in opinion, said:—

" The Bank of Brandywine was chartered March 15th 1871, with the right to borrow money, 'but not in excess of its capital.' On the 25th day of June, A. D. 1874, it mortgaged its banking property, for the sum of $15,000, to R. S. Paschall, who assigned to Charles S. Lewis, on the 30th of June, with a declaration of no set-off.

" On the 22d day of December 1875, the bank made an assignment to William W. Jeffries, who obtained a preliminary injunction, enjoining the said Charles S. Lewis from proceeding to the collection of the said mortgage, in any manner whatsoever.

" The ground upon which the complaint is based is, that 'the bond and mortgage were made without any compliance, or attempted compliance, with the provisions of the Act of Assembly of April 18th 1874, by virtue of which alone could such indebtedness have been lawfully created.'

" Section 7, article 16, of the constitution, is as follows : 'The stock and indebtedness of corporations shall not be increased, except in pursuance of general law, nor without the consent of the persons holding the larger amount, in value, of the stock, first obtained at a meeting to be held after sixty days' notice, given in pursuance of law.'

" A general Act of Assembly, to carry into effect this constitutional provision, approved April 18th 1874, is as follows : 'The capital stock or indebtedness of any corporation may be increased, from time to time, by the consent of the persons, or bodies corporate, holding the larger amount in value of the stock of such company ; provided, that no corporation shall increase the amount of its indebtedness beyond the amount of its capital stock subscribed, until the amount of its capital stock subscribed shall be fully paid in.'

" It is contended by the defendant, that neither the constitution nor the Act of Assembly has application, because the bank, by its charter, was authorized to borrow money to the extent of its capital, and this loan was within that limit.

" That the increase of indebtedness which is prohibited, means an increase beyond that allowed by laws existing at the time of the adoption of the constitution, and of the enactment of the general law.

" That 'even though the section means what complainants contend for, it was not intended to be applied to rights existing under the laws then in force.' * * * By the schedule to the constitution, section 2, it is provided, that 'all rights, actions and contracts, shall continue as if the constitution had not been adopted.'

" It is further contended that the stockholders, with knowledge

[Lewis *v.* Jeffries.]

of the mortgage, did not object, but acquiesced therein, and thereby ratified it.

"The language of the constitution is plain, direct and positive. It is an absolute prohibition, without qualification of any kind. 'The stock and indebtedness of corporations shall not be increased, except,' &c. By what authority, or by what rule of interpretation, shall we interpolate the words 'beyond the amount now allowed by law?'

"The proceedings of the convention do not favor the position of the defendants. That the convention did not look with favor upon the legislation which, about this time, with profuse liberality, flowed out to all sorts of corporations, may be seen in the section, as it was originally reported to the convention. It closes thus: 'Laws heretofore enacted, by which an increase of stock or bonds, or other indebtedness of any corporation, has been authorized, are hereby declared void, except so far as may be necessary to maintain the obligations of contracts.'

"It is not likely that a section born of this spirit would leave this very increase of indebtedness free from all restrictions and restraint. If there had been any doubt as to the application of the prohibition of this section of the constitution, it might be expected to be found and settled in the legislation which was to carry out the constitutional provision. The language of the act is as positive and general as the constitution. It affords no inference that any such doubt existed in the minds of the legislators. The manifest object of the constitution and the act is, that owners of corporate property shall have some supervision over that property and over their agents. We do not see how the second section of the schedule helps the argument of the defendant. What right is interfered with by giving the stockholders an opportunity to pass upon the question of mortgaging his property? What right is obstructed in staying for a time the inundation of debt? What vested right has the agent to endanger the property of the principal without his consent? If, however, this is no answer, a complete one may be found in the fact, that the legislature, in the charter which created the bank, reserved the right to alter or rescind any of its provisions. The Act of April 18th 1874 is the exercise of that right. The directors of the bank made the mortgage against the prohibition of the constitution and the Act of Assembly. This was not merely *ultra vires*, it was unlawful, and therefore void, and could not be ratified: Fowler *v.* Scully, 22 P. F. Smith 456. Are bonds and mortgages within the term 'indebtedness.' There surely cannot be higher or more dangerous debts, as applied to corporations. When it is considered that chattel mortgages may be so generally applied, it becomes evident that mortgages of all kinds are the very debts against which the stockholder might find his only protection, in the law which requires his consent. A mortgage

[Lewis *v.* Jeffries.]

upon the place of business and machinery of a manufacturing, printing, or publishing company; or upon the real estate and rolling stock of a steam or street railway, might be the surest and swiftest means of destruction. It is not necessary for us to refine upon the word 'indebtedness,' or to enlarge or restrict its general meaning. If, as has been argued by the defendant, a strict and literal reading of the constitution and act would prevent the receipt of deposits, and compel a cash business in all cases, we will wait until the exigencies call upon us to act. The present case involves no such questions. We now say only, that a bond and mortgage are within the meaning and intention of the law. This case furnishes a fitting example of the evil which was intended to be guarded against by the constitution. Three directors create a debt, not to meet an emergency of the business of the bank, but to lend the proceeds to a corporation, the president of which is one of the three directors. From such financiering, what but insolvency can result?

" We have followed the plain and obvious meaning of the constitution and law. In this we think we have also obeyed the spirit and object. If it be necessary in any event to enlarge or restrict this prohibition, it can be done with authority by a higher tribunal. We would encourage the idea which the constitution seems to suggest, that stockholders are the real owners of corporate property, and that managers and directors are but their trusted agents. Injunction continued."

From this decree the defendant took this appeal.

*Edward S. Dixon* and *John G. Johnson,* for appellants.—The debates of the constitutional convention show clearly that the increase of indebtedness contemplated was one that could not be made except by the allowance of the legislature; one not within the warrant of the charter. It was corporate indebtedness that was meant, such as involved a pledge of the franchises and required express legislative sanction. There is no intention disclosed to prevent corporations from incurring such obligations as are incidental to their existence and authorized by their charters. The section was not designed to prevent the creation of debts within the limit fixed by the charter, but forbid their expansion beyond the limit: Green's Brice's "Ultra Vires" 66; Philadelphia and Sunbury Railroad Co. *v.* Lewis, 9 Casey 37. The construction contended for would make it impossible for corporations to enter into any obligation by which a pecuniary obligation was incurred. The inevitable result would be that every corporation would stop business, for every act done by it incurs a pecuniary liability.

[Chief Justice AGNEW.—The true distinction perhaps is between the ordinary and extraordinary business of the bank.]

How are you to determine what is ordinary and extraordinary?

[Lewis *v.* Jeffries.]

The power to create this mortgage was a charter provision, and upon what theory can the exercise of the power be deemed extraordinary? Further, we contend that the section was not intended to apply to corporations in existence at the time of the adoption of the constitution: Hays *v.* Commonwealth, 1 Norris 518; Ahl *v.* Rhoads, 3 Id. 319.

*George Tucker Bispham* and *Wayne Mac Veagh*, for appellee.— If we assent to the argument of the appellant there is no power in the legislature to direct that the trustees of trust property when they deal with it shall consult with the owners. It certainly retains control over corporations so long as it does not interfere with charter rights, and in 1857 the power to alter and amend charter privileges was resumed in so far as it did not do injustice to the corporators. But our contention here is not for the change of any charter rights, but simply for the power to control and regulate, and to declare that the owners must be consulted before an increase of indebtedness can be incurred.

[AGNEW, C. J.—Banks increase their business daily by deposits. Suppose a mortgage had been given for deposits.]

They would clearly be within the powers of the bank. Indebtedness within the meaning of the constitution is indebtedness of a permanent character, and not that incurred in the ordinary conduct of business. Receiving deposits is undoubtedly such ordinary business.

[MERCUR, J.—Suppose instead of a mortgage the bank should give a certificate of deposit.]

All that is necessary to conduct the current business can be done, but there can be no contraction of indebtedness, *qua* indebtedness, and which is not the usual, ordinary business of the bank. For example, the president of a railroad may run the road and contract debts to do so, but he cannot contract a permanent loan without consulting the stockholders.

[AGNEW, C. J.—Where power is given to directors to do certain acts must stockholders be consulted?]

There is not only a constitutional provision requiring it, but the statutory mode is pointed out in the Act of 1874. The constitutional convention simply said that in making any increase of their indebtedness, corporations should consult their stockholders, and we believe and contend that they had the power to make this regulation.

[SHARSWOOD, J.—Suppose the charter authorizes $300,000 of stock and only $200,000 are subscribed. If the corporation wants to increase its stock to the amount of the difference, can it not do so?]

We insist that the stockholders must be consulted.

[AGNEW, C. J.—You contend that in depriving the directors of

[Lewis *v.* Jeffries.]

certain power and conferring it upon the stockholders there is no impairment of any right of stockholders ?]

Exactly. You cannot impair substantial rights or do injustice to stockholders. The statute neither enlarges nor diminishes any corporate right; it simply provides a method by which the action of corporate agents is to be controlled. The object is to guard not impair corporate privileges. .

We further contend that so far as the regulation of corporations is concerned the constitution does apply to existing corporations. This case brings us face to face with the question as to what control is reserved to the people over existing corporations. Neither the points decided nor the reasoning in Hays *v.* Commonwealth, *supra*, and Ahl *v.* Rhoads, *supra*, warrant the general proposition that no corporation which existed prior to the adoption of the constitution is affected by any of the provisions contained in the constitution and the Act of 1874. The first case assumed to alter a vested and valuable right of a corporator, and in the latter there was no increase of indebtedness, but simply an exchange of securities.

The judgment of the Supreme Court was entered March 4th 1878,

PER CURIAM.—It is ordered that the special injunction in this case be dissolved, and that the record be remitted for further proceedings. Costs to abide the final decree.

TRUNKEY, J., dissents.