#### OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1886.

## The Pennsylvania Railroad Co. *versus* Duncan.

1. The 8th Section of the 16th Article of the Constitution of Pennsylvania includes all corporations falling within the terms of the constitutional amendment of 1857, and also to those falling within the terms of the Act of May 3d, 1855, P. L., 423.

2. The Pennsylvania Railroad Company derives its authority to build the branch railroad from the western side of the Schuylkill river to Fifteenth street, Philadelphia, from the Act of May 16th, 1857, P. L., 519. It is therefore subject to the Act of May 3d, 1855, if not to the amendment of 1857.

3. The Pennsylvania Railroad Company accepted as part of its charter the Act of April 4th, 1868, and so became subject to the constitutional amendment of 1857, and as a consequence to the legislative power of the General Assembly.

4. The power of the Constitutional Convention to amend the charter of a corporation was the same as that of the General Assembly.

5. The Pennsylvania Railroad Company had at the adoption of the Constitution of 1874 no vested charter rights which would prevent its becoming subject to the provisions of the 8th Section of the 16th Article of said Constitution.

6. A common law action can be maintained against a corporation for an injury done to private property in the exercise of the right of eminent domain.

7. Where the legal right is vested in a trustee all actions at law which affect the trust, must be brought in his name.

8. Monongahela Navigation Co. *v.* Coon., 6 Barr, 379, followed.

January 30th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

(352)

ERROR to the Court of Common Pleas No. 2, of *Philadelphia County*: Of July Term, 1884, No. 109.

This was an action of trespass on the case brought by George R. Duncan against the Pennsylvania Railroad Company, June 6th, 1881, to recover for damage done by the defendant to his real estate situate on the northeast side of Filbert street, and extending from Twenty-Third street to the Schuylkill river, Philadelphia.

He alleged in his *narr* that he suffered damage to his property from the construction and operation of the defendant's railroad, as follows:

From the construction of an abutment and pier in the Schuylkill river opposite Filbert street; from the noise, burning cinders, smoke, dust and dirt incident to the operation and use of the railroad aforesaid; by deprivation of his use of Filbert street as a highway and of four hundred feet of building front on said street; and by deprivation of free access to the wharves on the Schuylkill front of his property. The defendant pleaded generally to the *narr*, and also specially to the effect that the said the Pennsylvania Railroad Company, by its charter and by certain acts of the General Assembly of the Commonwealth of Pennsylvania, passed prior to the adoption of the present State Constitution, was invested with the right to construct the railroad aforesaid, and was therefore not liable for such damages as were alleged in the *narr* as the price of the exercise of such right.

On the trial before FELL, J., the following facts appeared:

In 1876 George R. Duncan, plaintiff in this case, became the owner by purchase at sheriff's sale of a property situate at the northwest corner of Twenty-third and Filbert streets, Philadelphia, containing two hundred and thirty-one feet on Filbert street, and extending westward some four hundred and twenty-four feet to the low water mark of the Schuylkill river. This property had been owned by the Girard Tube Works, and the improvements consisted of a large main building on the south side of the lot, extending from Twenty-third street along Filbert street towards the river, together with coal sheds and other outbuildings.

In 1880 and 1881 the Pennsylvania Railroad Company built what is known as the Filbert street extension, crossing the Schuylkill river a short distance above Market street, and ending at Broad street. It was opened for freight in April, 1881, and for passengers on the 5th of December the same year.

From a point near Twenty-first street the properties on the south side of Filbert street were purchased, the buildings removed, and a substantial structure sustained by transverse

1 AMERMAN—23

[The Pennsylvania Railroad Co. *v.* Duncan.]

arches erected, upon which the tracks were laid. From Twenty-first street west to the river, the tracks were laid upon a structure of wooden and iron beams directly over the cartway of the street, and sustained by iron pillars some eighteen inches square, resting upon the footway inside of the curb line. This is the case along the whole length of the south side of the plaintiff's property, the structure being some forty feet high, and the railings or guards coming within one or two feet of the side of the building.

Plaintiff offered in evidence plans produced by the defendant on call of the plaintiff, showing, first, the elevation of the railroad in front of the plaintiff's property; second, ground plan of the tracks; third, ground plan of plaintiff's property in connection with the tracks.

Six photographs of the locality in question were also offered in evidence by plaintiff. None of the plaintiff's property was actually taken by the railroad company.

The difference in value of the entire property before the road was built and after it was completed was placed at about $50,000 by the plaintiff's witnesses, while the defendant's witnesses placed the depreciation in value as small, if anything at all.

The defendant admitted that it erected and that it operates said railroad, and that said railroad was in operation at the time of the bringing of this suit. The defendant also offered in evidence its charter approved April 13th, 1846, P. L., 312; also Act of Assembly, entitled "an Act for the sale of the Main Line," approved May 16th, 1857, P. L., 519; also deed poll of the Commonwealth to the defendant for the "Main Line;" also resolution of the stockholders of the defendant accepting the provisions of said Act of May 16th, 1857; also Act of Assembly approved March 27th, 1848, P. L., 273.

The plaintiff then offered in evidence Act of Assembly approved April 4th, 1868, P. L., 58, which it was admitted had been accepted by the defendant on the 11th of April, 1868; also an ordinance of the Council of the city of Philadelphia, entitled "an ordinance to authorize the Pennsylvania Railroad to occupy a portion of Filbert street for railroad purposes.

The defendant offered to prove that by its representatives it had appeared before the Law Committee of Councils of the city of Philadelphia and asserted and argued their unquestioned right, independent of any assent of the city, to construct the extension, for the purpose of rebutting any presumption which may possibly arise that the Pennsylvania Railroad Company in any manner became a party to the ordinance of the city authorities referring to the construction of

[The Pennsylvania Railroad Co. v. Duncan.]

the structure complained of in this suit. Objected to. Objection sustained. Exception. (Eighth assignment of error.)

The defendant offered to prove that the plaintiff has no interest individually in the property alleged to be injured, but that he holds as a naked trustee for certain National Banks of Pittsburgh. Objected to. Objection sustained. Exception. (Tenth assignment of error.)

The defendant presented the following points:

1. Under all the evidence in this cause, the plaintiff is not entitled to recover damages against the defendant for any alleged injury to his property by the construction of its Filbert street extension or branch in the form of action adopted in this cause, another remedy for any such damages having been given by the charter of the defendant and the supplements thereto in evidence. Refused. (Ninth assignment of error.)

2. The defendant, under its charter and supplements in evidence, had full lawful authority to erect and operate the said Filbert street extension or branch, and in doing so had the right to occupy Filbert street longitudinally, without incurring any liability by reason thereof to the plaintiff as owner of property abutting on said street.

3. The defendant, as purchaser of the main line of the public works of this state, under the Act of Assembly and deed in evidence, had full lawful authority to erect and operate the said Filbert street extension or branch, and in doing so had the right to occupy Filbert street longitudinally, without incurring any liability by reason thereof to the plaintiff as owner of property abutting on said street.

4. There is no evidence in this case that the defendant ever entered into any contract with the city of Philadelphia, relating to the construction of said Filbert street extension or branch, or ever sought any authority from said city for such construction.

5. Under all the evidence in this case, the verdict must be for the defendant.

These the court answered in the general charge as follows:

The court reserves for the consideration of the court in banc the first, second and third points of the defendant, and refuses to charge as requested in the defendant's fourth and fifth points. The court submitted the case to the jury simply upon the question of damages, saying in the general charge, inter alia, " The right to recover indirect or consequential damages against a corporation for injuries done to private property in the exercise of the right of eminent domain delegated to it by the state is a new one in Pennsylvania, being secured by the constitution of 1873. The liability of the corporation defen-

dant here depends upon whether or not it is subject to the provisions of the new constitution. This is a question of law entirely, and, as such, will have to be determined in the case. I have decided to reserve it, and submit the case to you simply upon the question of damages."

Verdict for the plaintiff for $20,000, subject to the points reserved.

The court entered judgment for the plaintiff on the verdict and the points reserved, refusing a motion to enter judgment for the defendant on the points reserved, *non obstante veredicto*, whereupon the defendant took this writ, assigning for error the ruling on the evidence before shown, the several answers to its points, the refusal to enter judgment for the defendant on the points reserved *non obstante veredicto* and the entering judgment for the plaintiff on the verdict.

*Wayne McVeagh,* for plaintiff in error.—1. The present constitution of this state, when properly construed, does not assume to surcharge with a new liability the exercise of a franchise vested in a corporation before the constitution took effect. In other words it does not assume to increase the price payable for the exercise of such franchise.

It is reasonable to assume that the constitution was framed and adopted with a knowledge of the constitutional law of the country upon the subject of the rights of corporations announced in Dartmouth College *v.* Woodward, 4 Wheaton, 518, and previously in Fletcher *v.* Peck, 6 Cranch, 87.

The doctrine announced in these cases does not interfere with the police power of the state. It does not deny the right of the state to regulate the commissions of wrongs within its borders. It does not deny the law-making power of a state authority to change the remedy for the assertion of any right which exists. The form of the remedy is not part of the contract. The tenth section of Art. XVII of the Constitution shows that the framers of the constitution recognized in the fullest extent the distinction between franchises vested by charters theretofore granted, and franchises conferred after the constitution took effect. This is also shown by the second section of Art. XVI of the Constitution.

2. If the present constitution, when properly construed, does assume to surcharge the exercise, and thereby increase the price of such purchase, the attempt to do so is plainly within the prohibition of the Constitution of the United States, denying to any state the power to impair the obligation of existing contracts: Dartmouth College *v.* Woodward, 4 Wheat., 518; Shrunk *v.* Navigation Co., 14 S. & R., 71; Monongahela Navigation Co. *v.* Coons, 6 W. & S., 101;

Henry v. Pittsburgh & Alleghenv Bridge Co.,. 8 W. & S., 85; Navigation Co. v. Coon, 6 Barr, 379; Mifflin v. R. R. Co., 4 Harris, 182; Bank of Pennsylvania v. Commonwealth, 7 Id., 144; N. Y. & Erie Co. v. Young. 9 Casey, 181; Iron City Bank v. Pittsburgh. 1 Wr., 340; Watson v. R. R. Co., Id., 469; Buckwalter v. Bridge Co., 2 Id., 281. These are all the decisions of this court upon the question previous to the adoption of the present constitution. The following cases upon this question have been decided by this court since the adoption of the constitution of 1874: Boom Co. v. Sanderson, 32 P. F. S., 402; Hays v. Commonwealth, 1 Norris, 518; Ahl v. Rhoads, 3 Id., 319; Lewis v. Jeffries, 5 Id., 340; Long's Appeal, 6 Id., 114; Pennsylvania R. R. Co. v. Langdon, 11 Id., 21; Lycoming Gas & Water Co. v. Moyer, 3 Out., 615.

There have been three cases deciding what ought not to have required decision, that municipal authorities, being agencies only of the state for the transaction of municipal business, are always within its legislative control, and that therefore the provisions of the present constitution are obligatory upon such corporations from the date of its adoption. Those cases are City of Reading v. Althouse, 12 Norris, 400; Borough of New Brighton v. Church, 15 Id., 331; and Pusey, v. The City of Allegheny, 2 Out., 522. While not direct authorities in support of the proposition for which the plaintiff in error is now contending, they are indirect authorities in its support, for they prove that this court has fully recognized the distinction between the municipal corporations which were plainly within the authority of the constitutional convention, and corporations whose chartered franchises were as plainly without the limits of such authority.

The proposition next in order of discussion is this: Did the plaintiff in error possess, prior to January 1st, 1874, by grant from the State, a franchise to build the extension or branch in question in this case; and, in doing so, was it at liberty to occupy a part of Filbert street longitudinally?

The power to build the portion of road mentioned can be derived from either of two explicit grants from the Commonwealth to the company; one the right to build branches contained in the original charter of 1846, and the other the right to extend the main line purchased from the Commonwealth in 1857 for seven and one half millions of dollars: Duncan's Appeal, 13 Norris, 435; Pittsburgh v. Railroad Co., 12 Wr., 355.

The defendant disclaims any authority from the Act of 9th June, 1874, or the ordinance of councils of Philadelphia.

It is equally true that the defendant, if possessed of au-

thority to build the portion of railroad in question might for that purpose occupy longitudinally a portion of Filbert street: Philadelphia & Trenton Railroad Co.'s Case, 6 Wh., 25; Faust *v.* Passenger Railway Co., 3 Phila. R., 164; Commonwealth *v.* E. & N. E. R. R. Co., 3 Casey, 339; Struthers *v.* The D. W. & P. R. R. Co., 6 Norris, 282.

A common law action for a wrong will not in any event be sustained against a corporation for the careful and proper exercise of the right of eminent domain granted to it by the state: Transportation Co. *v.* Chicago, 99 U. S., 635; McKinney *v.* Navigation Co., 2 Harris, 65; Beltzhoover *v.* Gollings, 5 Out., 293; White *v.* Borough of McKeesport, Id., 394.

*M. Hampton Todd* and *George W. Biddle*, for the defendant in error.—The defendant's right to recover damages for injuries of the character shown in this case is secured to him by Section 8, Article 16, of the Constitution of this State.

The plaintiff contends that the Constitution is not binding upon it, because, first, it has not accepted the provisions of that instrument; and second, that to impose liability on it for consequential damages, even through the medium of organic law, is to impair the obligation of contract contained in its charter, and therefore in violation of the Constitution of the United States.

We submit it is liable, because

I. Section 8, Article 16, of the Constitution affects the remedy, and therefore does not impair the obligation of contract.

A corporation takes its charter subject to the general law of the State and therefore subject to such changes as might be rightfully made in such law: In re Provident Institution for Savings, 9 Cushing, 611; Thorpe *v.* The Railroad Co., 27 Vermont, 140; Frankford Railway Co. *v.* The City, 8 P. F. S., 119; Balt. & Susquehanna R. R. Co. *v.* Goodwin, 10 How., 395, 400; Boston C. & M. Ry. Co. *v.* The State, 32 N. H., 215; Cooley Const., Lim., pp, 576, 577.

Exemption from general future legislation can never be implied. There must be an express contract: Morawetz Corporations, Section 441 and notes.

Police power extends to persons and property and cannot be abridged even by legislation: Morawetz Corp., Sections 442 and 443; Beer Co. *v.* Massachusetts, 97 U. S. Rep., 32.

A State may at any time alter the laws regulating procedure and provide new remedies for the ascertainment of justice: Morawetz Corp., section 448, note 2; Railroad Co. *v.* Hecht, 95 U. S. Rep., 170.

Statutes passed subsequently giving remedy for death, are

constitutional: Cooley's Const., Lim., 581, note 1 and cases cited; Boston & Me. R. R. Co. v. State, 32 N. H., 215.

II. The privilege of taking private property for public-use is such an element of sovereignty that it cannot be granted, so as to preclude future legislative control of its subsequent exercises: Mott v. Penn. R. R. Co., 6 Casey, 9; Brewster v. Hough, 10 N. H., 138.

III. By reason of the plaintiff having accepted additional privileges and amendments to its charter since the Act of May 3d, 1855, and the amendments of the Constitution of 1857, it subjected its charter to the power of the Legislature to "alter" the same "in such manner, however, that no injustice shall be done to the corporators."

The fourth amendment of 1857 to the Constitution is substantially the same as the Act of 3d May, 1855, above cited. Since the adoption of this amendment the plaintiff has accepted several amendments to its charter, and notably the Act of 4th April, 1868 (P. L., 59). This act limits the amount of recovery in cases of negligence resulting in death to $5,000, and was accepted by the plaintiff April 15, 1868, and has been held to be a part of its charter by the Supreme Court in Penna. R. R. Co. v. Langdon, 11 Norris, 21.

Imposing by Act of Legislature upon a corporation liability for consequential damages does no injustice to the corporators: Monongahela Nav. Co. v. Coon, 6 Barr, 379.

IV. By reason of the plaintiff having accepted the benefit of a general law passed since the adoption of the present Constitution, it is within the provisions of Section 2, Article XVI. of that instrument, and therefore holds its charter subject to the provisions of the Constitution.

The defendants' authority for building their railroad is not found in its original charter of 1846, nor in its amended charter of 1857, but only in the Act of 9th June, 1874, P. L., 282, in connection with the ordinance of councils of Philadelphia, of 13th of October, 1879.

It was essential to the plaintiff that it should have the consent of the city to enter upon and occupy Filbert street longitudinally.

The right to occupy the bed of a public highway or street must be by express grant or necessary implication: Commonwealth v. The Erie & N. E. R. R. Co., supra; Dillon on Munic. Corp., 560; Springfield v. The Railroad Co., 4 Cushing, 63; Boston & Albany R. R. Co. Case, 53 N. Y., 574; Cake v. The Railroad Co., 6 Norris, 307; Cemetery Co. v. New Haven, 43 Conn., 234; Bridge Co. v. The Bridge Co., 7 N. H., 35; Gulf R. R. Co. v. Shiels, 33 Georgia, 609; Central R. R. Co. v. Penn. R. R. Co., Am. Law, Rev. Feb'y, '80, 136.

[The Pennsylvania Railroad Co. *v.* Duncan.]

All·ordinances of the city being subject to the constitution, the accepting by the defendant of the right to occupy Filbert street longitudinally by virtue of the ordinance of 1879, was such an acceptance of legislation as renders "its charter subject to the provisions of this Constitution."

A common law action is the proper action for this case. Patent *v.* Railroad Co., Leg. Int. 1884, 224; McClinton *v.* Railroad Co., 16 P. F. S., 404; Long's Appeal, 6 Norris, 117.

Mr. Justice GORDON delivered the opinion of the court, February 15th, 1886.

We fully agree with all that has been said by the learned counsel for the plaintiff in error as to the inviolability of the charter of the Pennsylvania Railroad Company. We not only now assent, as we always have done, to the principle announced by the Supreme Court of the United States, in the Dartmouth College case, but are perfectly aware that whether we so assent or not, we must, as a subordinate jurisdiction, give to that case its proper effect. We also agree, that the framers of the Constitution of 1874, did not intend to violate the laws of the Federal Government, or to repeal the provisions of any charter theretofore granted by the Legislature of Pennsylvania. It follows, that a protracted discussion of these points would subserve no valuable purpose. Nevertheless, it seems to us as of no avail to deny the plain and obvious reading of sec. 8, art. 16, of the present Constitution. "Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury or destruction." It is admitted that the then existing municipal corporations are included in this provision, and that no language is elsewhere found in the Constitution, or its schedule which exhibits an intention to exclude them from the restriction thus imposed. But, confining ourselves to the words of this section, we are unable to comprehend the force of the reasoning which would exclude "other corporations" from the conditions to which their immediate correlatives have been subjected. Moreover; if we have regard only to the grammatical structure of the sentence, the doubt would be not as to the intention to embrace corporations then existing, but rather future ones. The word "invested," standing as it does alone, has undoubtedly a present signification, and cannot be made to embrace the future but by the addition of some verbal auxiliary. Thus, whilst we have no doubt of the design to apply the provisions

of this section to corporations which should thereafter be erected, yet can we by no possible construction, exclude those then in being. The answer, however, is, that the section under discussion, by ·the express terms of the constitution itself, was not intended to apply to private corporations existing at the time it was framed, and the 10th section of Article 17, is cited in support of this hypothesis : "The General Assembly shall not remit the forfeiture of any corporation now existing, or alter or amend the same, or pass any other general or special law for the benefit of such corporation, except upon the condition that such corporation shall thereafter hold its charter subject to the provisions of this Constitution." But we assume without fear of contradiction, that the provision here stated was not intended to apply to those corporations which could not claim exemption from what we may call constitutional legislation; in other words, such as from the nature of their charters, must necessarily come within the provisions of this new organic law. It would be folly to call upon such to accept that concerning which they had no choice. Therefore, all corporations falling within the terms of the Act of 1855, or the Amendment of 1857, are, so far as the provisions of that statute, or that amendment extend, concluded by the action of the convention of 1873. Beyond this, however, its prescriptions neither did, nor were intended to go, and so we have held in Hays v. The Commonwealth, 82 P. S. R., 518, and subsequent, cognate cases. We may also add, in order to avoid the possibility of mistake, that the power of the convention was, in this particular, no greater than that of the legislature. The defendant's charter must be regarded in the light of a contract, and is in all particulars inviolable, unless in the charter itself, or in some general or special law to which it was taken subject, there is a power reserved to the General Assembly to alter or amend, and, as in that case, the legislature might intervene to modify the charter of a corporation, so might the Constitutional Convention.

Whence, then, did the Pennsylvania Railroad Company derive its authority to build the branch from the western side of the Schuylkill to Fifteenth street? Certainly not from the Act of 1846, for that Act gave it a charter which embraced only the power to build and operate a road from Harrisburgh to Pittsburgh, but rather, as the counsel for the defendant below contends, from the Act of the 16th of May, 1857. This Act, *inter alia*, reads as follows : "That any company already incorporated by this Commonwealth, becoming the purchaser of the said main line shall possess, hold and use the same under the provisions of their Act of incorporation, and any

supplement thereto, modified. however, so as to embrace all the privileges, restrictions and conditions granted by this Act in addition thereto." This gave to the Pennsylvania Company a new charter containing all the privileges of that of 1846, and it was under the rights thus conferred that it built, and now operates, the branch in question. In this we, without hesitation, concur with the learned counsel for the defendant, who contends that the company was not driven to the necessity of resorting to the Act of 1874 for power to build its branch, but possessed that right under the privileges conferred by its original charter as extended by the Act of 1857. The question here raised, was fully discussed and settled in McAboy's Appeal, argued at Pittsburgh, November 3d, 1884, (11 Out., 548), and needs no further discussion.

But if the defendant's charter dates from 1857, it would seem to be clear that it was taken subject to the Act of May 3d, 1855, if not to the amendment of 1857, and if so, that Act must be taken as part of the charter. "Every charter of incorporation," says the statute, "granted, or to be granted, shall be deemed and taken to be subject to the power of the legislature, unless expressly waived therein, to alter, revoke or annul the same whenever in their opinion it may be injurious to the citizens of the Commonwealth, in such manner, however, that no injustice shall be done to the corporators, and as fully as if the reservation of said power had been therein expressed."

That under this Act the legislature has the power to alter all charters granted subsequently to its passage there can be no doubt, and no reason has been given why the charter of the defendant should be exempted from its provisions. The allegation that it was so exempted by reason of its purchase of the main line of the public works cannot be sustained, for we find nothing of the kind in the Act relative to the sale of those works. By that purchase it got, in addition to its right to hold and operate the main line of the state improvements, what was equivalent to a new charter, by which powers not conferred by the sale itself, were vested in it, and surely it took those powers subject to the Act of 1855. The conclusion here stated cannot be avoided but by showing that the new grant was accompanied by an express renunciation of legislative jurisdiction. Nor must we pass unnoticed the fact that this company accepted, as part of its charter, the Act of the 14th of April, 1868, and so became subject to the constitutional amendment of 1857, and, as a consequence, to the legislative power of the General Assembly. We thus find that the legal status of the Pennsylvania Company, at the time of the adoption of the constitution of 1874, was, in all respects,

similar to that of. the Monongahela Navigation Company at the time of the passage of the Act of 1844, so that we may regard the case of that company against Coon, reported in 6 Barr, 379, as decisive of the controversy in hand.   The corporation here mentioned was erected in 1836 without the imposition of any conditions respecting such consequential damages as might result from the construction of its works. On the 24th of June, 1839, a supplemental Act was passed by which certain new privileges were granted to the company, and in the last section of that Act the legislature reserved to itself the right " to alter, amend, or annul the charter, in such manner as to do no injustice to the stockholders."   Now, we may pause here for the moment to observe the similarity of the language thus used to that found in the Act of 1855, and the amendment of 1857, and to remark that this reservation of legislative power is as well part of the defendant's charter as it was that of the Monongahela Navigation Company. " Every charter of incorporation granted, or to be granted, shall be deemed and taken subject to the power of the legislature, unless expressly waived therein, . . . . . as fully as if the reservation of said power had been therein expressed."   The similarity of the position of the two companies with reference to the subject matter under consideration is thus rendered certain, and the decision which determines the liability of the one, must also, if adhered to, settle that of the other.   In 1842, Coon et al., brought their suit for damages resulting to them from the water backed by the defendant's dam on their mill wheels, but the Court refused to sustain this action, for the reason that this *locum tenens* of the state was not liable for damages of this character.   So the matter stood until 1844, when the General Assembly enacted, " that the company shall make amends for any damages done,. or that may be done, to lands and property on the Monongahela River, or its branches, or its tributary streams, by overflowing the same." Under this Act the plaintiffs brought a new action for the same damage as those claimed in the former suit, and it was held that they were entitled to recover.   It must here be observed, that not only was the same defence open to the company in the case cited, as that now urged for the defendant in the present contention, but to the further defence that the Act of 1844 was retrospective in its operation and imposed damages for which the Courts had previously declared the Navigation Company was not liable.

Nevertheless, Chief Justice GIBSON, who delivered the opinion of this Court, thus disposes of the controversy :  " Now, it has already been determined that the case before us was not provided for in the original Act of incorporation ; and had

it continued to stand on that foot, the power of the state would have been incompetent to burden the company with charges not originally imposed on it.   But in 1839 it accepted a grant of further powers and privileges, in consideration of an express reservation by the legislature of the power 'to alter, amend, or annul the said charter of said company, at any time thereafter, in such manner that no injustice be done to said corporation;' and in execution of it, they declared, in 1844, that the company 'shall make amends for any damage done, or that may be done, to lands or property laying upon the Monongahela River, or its branches and tributary streams, by overflowing the same.' It is evident, that by accepting additional privileges and powers on the terms prescribed in the grant to them, the company surrendered the inviolability of its contract to the discretion of the legislature. How this discretion has been exercised it is not for us to say; but if we were bound to do so, we would promptly say that it has, in the words of the declaratory Act, done no injury to the company."

We have thus a complete disposition of the case in hand, without resorting to the argument, which to us seems fallacious, that the constitution only provides a remedy for the enforcement of a pre-existing right, hence, does not infringe the company's charter powers.   The error discoverable in this position is, that there was no such pre-existing right as against the Commonwealth, and those upon whom she had conferred the right of eminent domain, and so it was held by all the cases from Shrunk v. The Navigation Company, down to the Lycoming Gas & Water Co. v. Moyer, 3 Out., 615.   On the other hand, whilst this provision does not in terms abridge the defendant's right of eminent domain, yet it does encumber the exercise thereof, and thus alters or modifies its charter.

We, therefore, rest our decision on what we deem its legitimate ground, that is, that the Act of 1855, and the constitutional amendment of 1857, must be taken to be as much part of the defendant's organic law, as though written therein, and, as a consequence, as well the constitutional convention, as the legislature, had the power to subject the company's exercise of the right of eminent domain to the provision that it make just compensation, not only for the property which it might choose to take, in the strict sense of that word, but also for such as it may injure or destroy.

What we have already said substantially disposes of all the assignments of error except the ninth and tenth, and they are comparatively unimportant.   It is certainly idle to urge that a remedy is given in the defendant's charter for the injury here complained of, when, throughout the case, the conten-

tion on part of the company, has been that no means of redress for such injury exist either in or out of the charter. Moreover, it is not pretended that the constitutional provision which requires compensation for property injured, before such injury has been complied with either by payment or security. The case thus falls within the doctrine announced in Dimmick v. Broadhead, 25 P. F. S., 464, and McClinton v. The Railroad Co., 16 Id., 404. The tenth assignment is answered by saying: where the legal estate is vested in a trustee, all actions at law which affect the trust estate must be brought in his name: Perry on Trusts, 3d ed., vol. 1, sec. 328. To prove, therefore, that the plaintiff, in the suit in hand, had individually no interest in the property, but held only as trustee for certain national banks in the city of Pittsburgh, could have no result legitimately helpful to the defendant's case.

The judgment of the Court below is affirmed.

PAXSON and GREEN, JJ., dissent.—We dissent. We are unable to see how the state can avoid its solemn contract by amending its constitution.