## Philadelphia & Reading R. Co., Plff. in Err., v. Matthias Patent.

The language of § 8, art. 16, of the Constitution of 1874 embraces corporations existing at the time of its adoption. (Pennsylvania R. Co. v. Duncan, 111 Pa. 352, 5 Atl. 742, followed.)

By accepting the additional privileges and powers conferred upon the Philadelphia & Reading Railroad Company since its original charter, according to the terms prescribed, that company has surrendered the inviolability of its charter to the discretion of the legislature.

(Decided February 15, 1886.)

Error to the Common Pleas, No. 4, of Philadelphia County to review a judgment for plaintiff in an action for damages. Affirmed.

The Philadelphia & Reading Railroad Company was incor-

Cited in Pennsylvania R. Co. v. Marchant, 119 Pa. 556, 4 Am. St. Rep. 659, 13 Atl. 690; Gloninger v. Pittsburgh & C. R. Co. 139 Pa. 13, 28, 21 Atl. 211; Williamsport v. Williamsport Pass. R. Co. 3 Pa. Co. Ct. 39, 42; Philadelphia v. Philadelphia & R. R. Co. 7 Pa. Co. Ct. 390, 400.

NOTE.—A railroad company is liable to abutting property owners on a street on which its tracks are laid, although at grade, for the consequential injuries suffered by them. Pennsylvania, S. Valley R. Co. v. Walsh, 124 Pa. 544, 10 Am. St. Rep. 611, 17 Atl. 186; Pennsylvania, S. Valley R. Co. v. Ziemer, 124 Pa. 560, 17 Atl. 187; Pennsylvania R. Co. v. Duncan, 129 Pa. 181, 132 U. S. 75, 33 L. ed. 267, 10 Sup. Ct. Rep. 34; Jones v. Erie & W. Valley R. Co. 151 Pa. 30, 17 L. R. A. 758, 31 Am St. Rep. 722, 25 Atl. 134.

porated by the act of April 4, 1833 (P. L. p. 144), to construct a railroad from Philadelphia to Reading.

By an act of assembly of August 23, 1864 (P. L. p. 982), a supplement to the defendant's charter, it was empowered to straighten and widen its railway or construct additional tracks upon the same and, with the consent of the proper corporation owning the same, to straighten and widen or construct additional tracks upon any of the railways then held by it under lease; the provisions of which act by the act of March 19, 1872, were extended to all railways leased by the said Philadelphia & Reading Railroad Company since its passage.

In June, 1883, the defendant finding that the alignment of the railroad along Cresson street was irregular and crooked, and, by reason of its very close proximity to the houses on the southern side of the street, was a source of great and constant danger to the travelers thereupon (as a matter of fact one person having been killed at the corner of Jackson street by being caught between the cars and the side of a house), straightened the line of the railroad upon said Cresson street, between Green lane and Mechanic street, by moving the tracks a short distance, opposite the plaintiff's house about 8 feet, from the southerly side of the street, towards the northerly side. The effect of the change has been so to occupy the part of the street in front of plaintiff's house that it is no longer available as a passageway for carts.

The plaintiff thereupon brought this action against the Philadelphia & Reading Railroad Company, alleging that it was a corporation invested with the power of taking property for public use; and that it had a railroad along the southwesterly side of Cresson street, leaving a cartway on the northeasterly side thereof in front of plaintiff's house; and that it was the duty of the defendant, under the Constitution and laws of the commonwealth, to make just compensation before taking, injuring, or destroying private property by the construction, alteration, or enlargement of its works; but that defendant, without making compensation, altered its railroad tracks as before mentioned, whereby the cartway is obstructed, and access to the plaintiff's house by vehicles is prevented and cut off, and the value of the property is depreciated.

The case was argued and decided in the court below upon the plaintiff's demurrer to the special plea, the first three grounds being technical ones; the last, the only important one, stating

that, although the defendant had authority to make such a straightening of its track, there was nothing in the plea to show any exemption from liability for the damages occasioned thereby.

The demurrer was sustained, and the defendant brought error.

*Thomas Hart, Jr.,* for plaintiff in error.—The mere authority to construct a railroad includes power to lay sidings, construct additional tracks, etc. Philadelphia, W. & B. R. Co. v. Williams, 54 Pa. 103; Cleveland & P. R. Co. v. Speer, 56 Pa. 325, 94 Am. Dec. 84; Black v. Philadelphia & R. R. Co. 58 Pa. 249.

. And see, in the same cases, that a railway company is not required to exercise its whole authority in the very beginning.

These cases were applied in the case of People's Pass. R. Co. v. Baldwin, 37 Phila. Leg. Int. 424, 14 Phila. 231, where it was held that the passenger railway company which had, by its charter, granted in 1873, acquired the right to lay a double track on Front street in the city of Philadelphia, had not lost its right to lay a second track, by reason of its having at the outset laid but a single track which it continued to use until 1880; that no rule of law in this state required a railroad corporation to exercise all the powers contained in its grant in the beginning, or declares that those powers not then exercised should be lost. And see Yost v. Philadelphia & R. R. Co. 29 Phila. Leg. Int. 85.

Snyder v. Pennsylvania R. Co. 55 Pa. 340, was a case like this: The railroad company moved its track in a public street, nearer to a landholder's lot, but within the limits of the street. It was held that the railroad company had the right to do so. No special authority is alluded to, in this case, to make such a removal of tracks, and it must have rested on the original power to build a railroad.

Cleveland & P. R. Co. v. Speer, 56 Pa. 325, 94 Am. Dec. 84, is to the same effect. There new switches and a siding were put in opposite plaintiff's house in Preble street. The court said (p. 335): "If, in a spirit of accommodation, the company was willing for the time being to confine itself to the south side of Walnut street, it did not thereby strip itself of the power of going north of it when it found it necessary to lengthen the curve of its side tracks in order to reach its shop and yards in safety."

A railroad company may, within the location, erect buildings required in its business. Wilson v. Philadelphia & R. R. Co. 5 W. N. C. 185, a case where a watchbox was put up in this very street. Lance's Appeal, 55 Pa. 16, 93 Am. Dec. 722.

It may allow others to erect such buildings. Grand Trunk R. Co. v. Richardson, 91 U. S. 454, 23 L. ed. 356.

It may maintain a line of telegraph or use the materials found within the location, as timber, etc., and may cut growing trees, as well after construction as at that time. Brainard v. Clapp, 10 Cush. 6, 57 Am. Dec. 74.

It may erect fences or structures along its track, which will keep adjoining owners from crossing. Boston Gaslight Co. v. Old Colony & N. R. Co. 14 Allen, 444; Presbrey v. Old Colony & N. R. Co. 103 Mass. 5.

It may, in short, use the location for any purpose of a railroad, and is itself the judge of the exigency requiring the use in each case. Brainard v. Clapp, 10 Cush. 6, 57 Am. Dec. 74; Curtis v. Eastern R. Co. 14 Allen, 55.

See numerous instances of the various kinds of use a railroad company may make of the ground within the limits of its location. Pierce, Railroads, 1881, 159, and cases in notes 4–7, and p. 160 in notes 1–5.

And it is said: "It may lay its tracks—side tracks as well as main tracks—at any place within the location, and shift them from place to place within it;" referring, among other cases, to our own of Cleveland & P. R. Co. v. Speer, 56 Pa. 325, 94 Am. Dec. 84. See 7 Allen, 524; Sevenoaks, M. & T. R. Co. v. London C. & D. R. Co. L. R. 11 Ch. Div. 625; West Philadelphia Pass R. Co. v. Public Buildings, Leg. Int. 1873, p. 100; West Philadelphia Pass. R. Co. v. Philadelphia, 10 Phila. 70.

An authority to condemn a roadway to a certain width is not lost by a condemnation of a less width. At any time afterwards the condemnation may be made up to the full width authorized. The power cannot be said to be exhausted because it has never been exercised, and the fact that the road has been run on a smaller roadway does not necessarily give rise to the implication that the road was treated as completed. Mills, Em. Dom. § 58, citing Childs v. New Jersey C. R. Co. 33 N. J. L. 323; Sadd v. Maldon, W. & B. R. Co. 20 L. J. Exch. N. S. 102; Stamps v. Birmingham, W. & S. Valley R. Co. 17 L. J. Ch. N. S. 431.

Authority to maintain a public improvement of suitable width, depth, and dimensions will authorize alterations by widening and deepening. Selden v. Delaware & H. Canal Co. 29 N. Y. 634; Bruce v. Delaware & H. Canal Co. 19 Barb. 376.

Where by statute a railroad company is authorized to appropriate for its right of way a strip of ground, 60 feet in width, and it enters on land whereon it builds its road, but does no act indicating clearly the breadth of the strip taken, it will be inferred that the railroad company has appropriated a strip as wide as it is permitted to take by the statute. Prather v. Western U. Teleg. Co. 89 Ind. 501.

In Worcester v. Western R. Corp. 4 Met. 564, where the charter of a railroad company provided for a road not exceeding 5 rods wide, the court said: "This is the extent to which they are authorized to take land without the consent of the owner; and this, therefore, we think, is the extent to which the law regards the land as appropriated to public use." See Babcock v. Western R. Corp. 9 Met. 553, 43 Am. Dec. 411; Indianapolis, P. & C. R. Co. v. Rayl, 69 Ind. 424.

Section 8, art. 16, of the Constitution of 1874 was not intended to apply to existing corporations.

In Hays v. Com. 82 Pa. 518, which arose under § 4 of the article upon the subject of cumulative voting, it was held that it did not apply to a corporation existing prior to the adoption of the new Constitution, which had not accepted the benefits of any legislation under said Constitution. The court (p. 523) put the case on the ground that the legislature did not intend to subject any private corporation to any of the provisions of the new Constitution which might in any degree change the charter thereof, and said (p 524): "Charters of private corporations are left exactly as the new Constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state by accepting the benefit of some future legislation."

In Ahl v. Rhoads, 84 Pa. 319, a case arising under § 7 of article 16, upon the subject of increase of indebtedness, it was held that a bank, incorporated prior to the adoption of the Constitution, which has not since accepted the benefits of any legislation thereunder, is not subject to that provision. See also Lewis v. Jeffries, 86 Pa. 340; Reading v. Althouse, 93 Pa. 400; New Brighton v. United Presby. Church, 96 Pa. 331; Pusey

v. Allegheny, 10 W. N. C. 561; Philadelphia v. Fox, 64 Pa. 169; Minnig v. New York, C. & St. L. R. Co. 11 W. N. C. 297; Duncan v. Pennsylvania R. Co. 7 W. N. C. 551; Chincleclamouche Lumber & Boom Co. v. Com. 12 W. N. C. 357; Long's Appeal, 87 Pa. 114.

But should it be decided that § 8, article 16, was intended to apply to existing private corporations, its operation cannot be extended to those like this defendant, whose charters were granted, without a provision for alteration or appeal, prior to the constitutional amendment of 1857.

It is settled law now that a railroad company may lay its tracks in a street under express or implied authority. Philadelphia & T. R. Co.'s Case, 6 Whart. 26, 36 Am. Dec. 202; Com. v. Erie & N. E. R. Co. 27 Pa. 339, 67 Am. Dec. 471; Pittsburgh v. Pennsylvania R. Co. 48 Pa. 355; Struthers v. Dunkirk, W. & P. R. Co. 87 Pa. 282.

The question of the inviolability of the charters of private corporations was examined at length in Iron City Bank v. Pittsburgh, 37 Pa. 340, where the United States decisions were examined, and it was concluded that the grant of a corporate franchise by an act of legislature was a contract between the state and the grantee, the obligation of which a subsequent legislature could not impair. And see Bank of Pennsylvania v. Com. 19 Pa. 144; and Com. *ex rel.* Atty. Gen. v. Pittsburgh & C. R. Co. 58 Pa. 26.

After the completion of the contract by the organization of the company and the construction of its railroad, the exercise of the powers conferred cannot be made dependent upon a new and additional liability. See Monongahela Nav. Co. v. Coons, 6 Watts & S. 101; Henry v. Pittsburgh & A. Bridge Co. 8 Watts & S. 85.

Neither a state nor a person, natural or artificial, acting by its authority or command, under a law which the legislature is competent to make, is answerable for consequential damages, occasioned by the construction of a highway further than may be specially provided in that law.

Where, before the new Constitution, consequential damages were recovered, it was under some provision in the charter of the particular company. Mifflin v. Harrisburg, P. M. & L. R. Co. 16 Pa. 182; Lycoming Gas & Water Co. v. Moyer, 11 W.

N. C. 443; Buckwalter v. Black Rock Bridge Co. 38 Pa. 281; Bald Eagle Boom Co. v. Sanderson, 81 Pa. *402.

In the latter case, the court below said: "It is well-settled law in Pennsylvania, that a corporation empowered to make a public improvement, such as this corporation, is not responsible for indirect or consequential damages, unless the liability to pay for them is imposed as a part of the price of the franchise. In many of the charters granted by the legislature this obligation to make compensation for consequential damages has been imposed, while in others it has been omitted. We must, therefore, have recourse to the charter of the defendants to determine the extent of their liability under it."

And this language was repeated by Judge STRONG, in Watson v. Pittsburgh & C. R. Co. 37 Pa. 479.

In New York & E. R. Co. v. Young, 33 Pa. 181, Judge THOMPSON said: "That the legislature may direct otherwise [that is, providing for consequential damages] nobody doubts; but the liability does not exist, unless it is expressed. The act of assembly does not require the company to pay consequential damages, and none were recoverable from them." See Shrunk v. Schuylkill Nav. Co. 14 Serg. & R. 82.

When a charter provides that the lands of a college shall not be taxed, this provision cannot be repealed. Northwestern University v. Illinois, 99 U. S. 309, 25 L. ed. 387; Home of the Friendless v. Rouse, 8 Wall. 430, 19 L. ed. 495.

A charter to a railroad company exempting all its property from taxation is a contract, and a law subsequently passed, laying a tax on the company's property, violates the obligation of the contract, and is void. Wilmington & W. R. Co. v. Reid, 13 Wall. 264, 20 L. ed. 568.

Of course, no charter ever contained any express statement that the company should not be liable for consequential damages; but this charter does grant the right to enter upon lands, and it prescribes and limits the terms, which negatives the idea of any further liability. Pennsylvania R. Co. v. Langdon, 92 Pa. 21, 37 Am. Rep. 651.

In Keith v. Clark, 97 U. S. 454, 24 L. ed. 1071, a constitutional amendment of the state of Tennessee was held to be in conflict with the provisions of the Constitution of the United States against impairing the obligation of contracts; and see

Haus v. Com. 82 Pa. 518; Wilson v. Philadelphia & R. R. Co. 5 W. N. C. 185.

Numerous cases decide that, where an act of incorporation provides a remedy for damages, by the construction of a work of internal improvement, an injured party cannot maintain a common-law action. McKinney v. Monongahela Nav. Co. 14 Pa. 65, 53 Am. Dec. 517; Cumberland Valley R. Co. v. McLanahan, 59 Pa. 23; Koch v. Williamsport Water Co. 65 Pa. 288; Struthers v. Dunkirk, W. & P. R. Co. 87 Pa. 285.

In cases where a company was held liable for consequential damages, the proceeding was by a jury of view. Mifflin v. Harrisburg, P. M. & L. R. Co. 16 Pa. 182; White v. McKeesport, 101 Pa. 394. .

*James P. Dolman* and *John Dolman,* for defendant in error. —There seems to be little conflict of authorities as to the power of a railroad company to change its tracks after having once located them. 1 Redf. Railways, 410; Mills, Em. Dom. § 58; Blakemore v. Glamorganshire Canal Nav. Co. 1 Myl. & K. 154; Glamorganshire Canal Co. v. Blakemore, 1 Clark & F. 263; Atkinson v. Marietta & C. R. Co. 15 Ohio St. 21; Cayuga Bridge Co. v. Magee, 2 Paige, 116, Affirmed in 6 Wend. 85.

In Hartford, N. L. W. & T. County Soc. v. Hosmer, 12 Conn. 364, a turnpike company was authorized to erect and establish two turnpike gates for the collection of tolls, etc., and it was held that the power of locating the gates was exhausted when it had been once exercised, and that the company had no power subsequently to remove the gates to other places. The same point was decided in State v. Norwalk & D. Turnp. Co. 10 Conn. 157.

In Moorhead v. Little Miami R. Co. 17 Ohio, 340, it was expressly decided that a railroad company could not change the location of its tracks, even although it had originally laid but a single track, and the location chosen would not permit of a double track which it desired to lay, and which under its charter it had a perfect right to do. But the case which comes nearest to the present is that of Little Miami R. Co. v. Naylor, 2 Ohio St. 235, 59 Am. Dec. 667.

In Sevenoaks, M. & T. R. Co. v. London, C. & D. R. Co. L. R. 11 Ch. Div. 625, it was decided that, under the power to maintain a railway and works, a flight of stone steps might be erected

for the purpose of affording a more convenient access to a station.

In the construction of a charter, to be in doubt is to be resolved, and every resolution which springs from doubt is against the corporation. If the usefulness of the company would be increased by extending its privileges, let the legislature see to it, but let it be remembered that nothing but plain English words will do it. Pennsylvania R. Co. v. Canal Comrs. 21 Pa. 9, 22; Com. v. Pittsburgh & C. R. Co. 24 Pa. 159, 62 Am. Dec. 372; Currier v. Marietta & C. R. Co. 11 Ohio St. 228; Cooley, Const. Lim. *530.

Const. 1838, art. 1, § 26, Amend. 1857, has been held to apply to grants of franchises separate from, as well as those contained in, charters of incorporation. Zimmerman v. Perkiomen & R. Turnp. Co. 81 Pa. 96.

The Constitution uses the word "charter" in its loose and popular sense, rather than in its strictest signification. Iron City Bank v. Pittsburgh, 37 Pa. 340.

That the Constitution operated as a repeal or alteration, see: Minnig v. New York, C. & St. L. R. Co. 11 W. N. C. 297; Chincleclamouche Lumber & Boom Co. v. Com. 12 W. N. C. 357.

The imposition of a liability for consequential damages, even for acts done previously to the passage of the law, does no injustice to the corporators. Monongahela Nav. Co. v. Coon, 6 Pa. 379, 47 Am. Dec. 474.

It is admitted that, aside from the Constitution of 1874 there would be no liability in a case of this kind; but, under that Constitution, the right to recover is clear. Mifflin v. Harrisburg, P. M. & L. R. Co. 16 Pa. 191; Snyder v. Pennsylvania R. Co. 55 Pa. 340; Summy v. Pennsylvania R. Co. 2 Legal Opinion, 56; Hare, J., in Duncan v. Pennsylvania R. Co. 7 W. N. C. 556; Minnig v. New York, C. & St. L. R. Co. 11 W. N. C. 297; Reading v. Althouse, 9 W. N. C. 22; Pusey v. Allegheny, 10 W. N. C. 561; Pittsburgh & L. E. R. Co. v. Bruce, 12 W. N. C. 554.

Its object was remedial, and the mischief was as great whether the act was done by a corporation chartered before or by one chartered after the adoption of the Constitution. The presumption is that the remedy was intended to be as extensive as

the mischief.  Minnig v. New York, C. & St. L. R. Co. 11 W. N. C. 297.

The 2d clause of the same section has been judicially held to apply to existing corporations, and there is nothing to indicate a different intention as to the two clauses.  Bachler's Appeal, 90 Pa. 207; Long's Appeal, 87 Pa. 114; Buckalew, Const. 246, 263, *et seq.;* Chincleclamouche Lumber & Boom Co. v. Com. 12 W. N. C. 357.

All portions of a charter, except those which erect the corporation, are construed precisely as the same grants would be if made to an individual; they possess no special sanctity, and can claim no greater exemption because comprehended in one enactment.  STORY, J., in Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. ed. 629; Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. ed. 774; Providence Bank v. Billings, 4 Pet. 514, 7 L. ed. 939; Thorpe v. Rutland & B. R. Co. 27 Vt. 140, 62 Am. Dec. 625; Rodemacher v. Milwaukee & St. P. R. Co. 41 Iowa, 297, 20 Am. Rep. 592; Branin v. Connecticut & P. Rivers R. Co. 31 Vt. 214.

The phrase "chartered rights" is a very catching one, and is frequently used by counsel; but, to properly determine the question in this case, we must forget that the plaintiff is a corporation and view the effect of the section of the Constitution upon the same franchise in the hands of a private individual.  The Constitution of the United States does not protect charters, but the obligation of contracts.  WAITE, Ch. J., in Stone v. Mississippi, 101 U. S. 814, 25 L. ed. 1079.

In Louisville & O. Turnp. Road Co. v. Ballard, 2 Met. (Ky.) 165, DUVALL, J., said: "Rights of property in a chartered corporation are no more sacred than the same rights would be in the person of the citizen.  A patent from the commonwealth to an individual, for land, is a contract of as high a nature, and confers rights as much beyond the reach of the legislature as a grant of property or of chartered privileges to a corporation."

Where a state contracts with a private person it is regarded *pro hac vice* as a private person itself.  Davis v. Gray, 16 Wall. 203, 21 L. ed. 447; Fletcher v. Peck, 6 Cranch, 87, 3 L. ed. 162; Cooley, Const. Lim. *333.  See Robertson v. State Land Office, 44 Mich. 274, 6 N. W. 659.

A grant from a state stands upon no higher ground than a grant from an individual; and the legislature, in the exercise

of its sovereign capacity, may legislate to just the same extent over both. Louisville & O. Turnp. Road Co. v. Ballard, 2 Met. (Ky.) 165; DeGraff v. St. Paul & P. R. Co. 23 Minn. 144; Providence Bank v. Billings, 4 Pet. 514, 7 L. ed. 939, and Rodemacher v. Milwaukee & St. P. R. Co. 41 Iowa, 297; Satterlee v. Matthewson, 2 Pet. 380, 7 L. ed. 458; Jackson *ex dem.* Hart v. Lamphire, 3 Pet. 280, 7 L. ed. 679; Boston Beer Co. v. Massachusetts, 97 U. S. 28, 24 L. ed. 989; and Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 659, 24 L. ed. 1036.

Suppose one man should contract with another for the erection of a house, the legislature could not relieve either party from his obligation to perform his part of the same; but could it not, for instance, make the contractor liable to his workmen for any injury resulting from the negligence of a fellow workman, thereby changing the law in that respect? Deppe v. Chicago, R. I. & P. R. Co. 36 Iowa, 52; Schroeder v. Chicago, R. I. & P. R. Co. 41 Iowa, 344.

Any doubt which may exist arises from a misapprehension of what is protected by the Constitution of the United States. It protects the obligation of a contract; not the contract itself, much less the interest which passed by it. Ogden v. Saunders, 12 Wheat. 257, 259, 6 L. ed. 620; Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. ed. 773.

The exact point at issue has been decided against the railroad company, by the supreme court of Iowa. Drady v. Des Moines & Ft. D. R. Co. 57 Iowa, 393, 10 N. W. 754; Mulholland v. Des Moines, A. & W. R. Co. 60 Iowa, 740, 13 N. W. 726.

A law providing for the liability of railroad corporations to day laborers employed by contractors has been sustained, even where the charter contained an express exemption from legislative control. Branin v. Connecticut & P. Rivers R. Co. 31 Vt. 214; Kent v. New York C. R. Co. 12 N. Y. 628; Hart v. Boston, R. B. & L. R. Co. 121 Mass. 510; Peters v. St. Louis & I. M. R. Co. 23 Mo. 107.

In a grant by the state, nothing passes by implication. Above all, there is never any implied contract that the legislature will cease to exercise those sovereign powers which have been lodged in it for the public good, although this exercise extended to the destruction of vested rights. To hold otherwise would be a mischievous abridgment of legislative power. Story, Const. § 1383, *et seq.;* Monongahela Nav. Co. v. Coons, 6 Watts & S. 113;

Providence Bank v. Billings, 4 Pet. 514, 7 L. ed. 939; Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. ed. 773; Newton v. Mahoning County, 100 U. S. 548, 25 L. ed. 710; Jackson ex dem. Hart v. Lamphire, 3 Pet. 280, 7 L. ed. 679; Satterlee v. Matthewson, 2 Pet. 380, 7 L. ed. 458; Boston Beer Co. v. Massachusetts, 97 U. S. 28, 24 L. ed. 989; Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 659, 24 L. ed. 1036; Cooley, Const. Lim. **284, 358; Duncan v. Pennsylvania R. Co. 7 W. N. C. 556.

No case has ever denied the right to recover in a common-law action where a liability exists and no statutory remedy has been provided. Troy v. Cheshire R. Co. 23 N. H. 83, 55 Am. Dec. 177; Dean v. Sullivan R. Co. 22 N. H. 316; 1 Redf. Railways, 349, note; Eaton v. Boston, C. & M. R. Co. 51 N. H. 504, 12 Am. Rep. 147; Lister v. Lobley, 7 Ad. & El. 124; Kennet & A. Canal Co. v. Witherington, 11 Eng. L. & Eq. Rep. 472.

Even where a statutory remedy exists, if the company alone has the right to invoke it, and neglects to do so, the right to a common-law action is not excluded. Pierce, Railroads, 174, 178.

When a corporation omits to perform something which is a prerequisite to the lawful exercise of the right of eminent domain, a common-law action will lie. McClinton v. Pittsburg, Ft. W. & C. R. Co. 66 Pa. 404. See also Dewar v. People, 40 Mich. 401, 29 Am. Rep. 545.

Opinion by Mr. Justice Gordon:

This is an action on the case, brought by the plaintiff below, for the recovery of damages alleged to have been caused by the shifting and relocation of the railroad tracks of the defendant on the street, in front of the said plaintiff's premises, in such a manner as to deprive him, in whole or in part, of his lawful use of the said street. The only material question involved in this controversy, a question raised by a demurrer to the defendant's plea and determined against it in the court below, is whether or not the company was answerable for damages such as here charged, which are of a purely consequential character.

In determining this proposition, we need not have reference to decisions of this court prior to the year 1874, for the matter depends upon the power of the convention which framed our new Constitution to amend or modify the defendant's charter and to encumber, by a new burden or restriction, the rights con-

ferred by that instrument. That the language of the 8th section, art. 16, of the Constitution of 1874 does embrace corporations existing at the time of its adoption, we have just decided in the case of Pennsylvania R. Co. v. Duncan, 111 Pa. 352, 5 Atl. 742, so that if this section is applicable to the Philadelphia & Reading Company, the judgment of the court below was well rendered and must be allowed to stand.

Our inquiry, then, as we held in the case cited, is limited to the defendant's status with reference to the previous legislation of May 3, 1855, or the constitutional amendment of 1857, for, if it were subject to either of these, it follows, as a consequence, that it was also subject to the legislative power of the commonwealth, whether exercised by the general assembly or the constitutional convention. Now, the 4th amendment of 1857 reads thus: "The legislature shall have the power to alter, revoke, or annul any charter of incorporation hereafter conferred by or under any special or general law, whenever, in their opinion, it may be injurious to the citizens of the commonwealth; in such manner, however, that no injustice shall be done to the corporators."

Confessedly, that part of the defendant's charter, under which it made the alteration complained of, was granted by the act of August 23, 1864, and its supplement of March 19, 1872, by which it was empowered to straighten and widen its roadbed, or construct additional tracks on its own lines or upon those which it held and operated as lessee. Thus, while the original charter of this corporation dated back to the 4th of April, 1833, yet by the acceptance of subsequent legislation, it was brought within the amendment of 1857 as effectually as though the terms thereof had been made part and parcel of its organic law.

We may, therefore, finally dispose of this case by an adoption of the language of Chief Justice GIBSON as found in the case of Monongahela Nav. Co. v. Coon, 6 Pa. 382, 47 Am. Dec. 474. "It is evident that, by accepting the additional privileges and powers, on the terms prescribed in the grant of them, the company surrendered the inviolability of its contract to the discretion of the legislature. How this discretion has been exercised it is not for us to say; but if we were bound to do so, we would promptly say that it has, in the words of the declaratory act, done no injustice to the company."

The judgment is affirmed.